■ In the Matter of HAROLD SCHULMAN et al., Respondents, v. NEW YORK CITY HEALTH AND HOSPITALS CORPORATION et al., Appellants.— Judgment, Supreme Court, New York County, entered on October 17, 1972, reversed on the law and in the exercise of discretion, and vacated, and the matter remanded to Spiegel, J. at Special Term for reconsideration, without costs and without disbursements. This action is taken in fairness to all parties and in light of judicial decisions handed down since the determination herein, most notably *Roe* v. *Wade* (410 U. S. 113) and *Doe* v. *Bolton* (410 U. S. 179). Upon reconsideration, Special Term shall permit all parties to file further and additional briefs as they deem warranted, and shall make a determination anew in light of the supplemental material. Concur — Stevens, P. J., Markewich, Nunez and Lane, JJ.; McGivern, J., dissents in the following memorandum: I would reverse and dismiss the petition now. I see no point to remanding the question to Special Term for a play-back of the contentions we already know. Nor do I see how *Roe* v. *Wade* (410 U. S. 113) and *Doe* v. *Bolton* (410 U. S. 179) affect the question we must decide. These recent cases of the United States Supreme Court, contrary to common report, make it clear that a woman does not have an absolute con-

stitutional right to an abortion on demand. True, the right seems to be countenanced up to the end of the first six months and during this interim the court seems to withdraw its recognition of the unborn. But, after that, the Supreme Court, in its preternatural wisdom, shrinks from the unfettered destruction of a child ready to be born. However, through all stages, unquestionably from the end of the first trimester, the right of the State to adopt strict standards for the licensing and supervision of all abortionists is repeatedly recognized. Even Mr. Justice Douglas concedes: " There is no doubt that the State may require abortions to be performed by qualified medical personnel. The legitimate objective of preserving the mother's health clearly supports such laws. Their impact upon the woman's privacy is minimal ". Furthermore, the fact of a doctor's consultation, or dates, has never been shielded by professional privilege. (See Richardson, Evidence [9th ed.], §§ 448–449; see, also, *Matter of Judicial Inquiry Pursuant to the Order of the Appellate Division of the Supreme Court of the State of New York for the Second Department [Anonymous "P"]*, 8 A D 2d 842.) Now, the only question before us is the validity of the requirement of the New York City Health and Hospitals Corporation and the New York City Department of Health " that the fetal death certificate which is filed pursuant to Article 204 of the New York City Health Code include the name and address of the patient." The answer is that all the pertinent local statutes, declaratory of the public interest, were enacted with the permission of the Legislature of the State of New York. And the subject of abortion still lies primarily within the domain of the Legislature. Clearly, vital statistics of births and deaths are within the legitimate interest of the State as provided in section 4100 *et seq.* of the Public Health Law and section 1706 of the New York City Charter. Statistics of births and deaths by their very nature encompass identification of the individual involved. Section 4100 of the Public Health Law explicitly provides for indexing of a fetal death by the mother's name. And records of fetal death would be meaningless without identification of the mother. And it may be pertinently observed that the' necessity of recordation acts as a deterrent to the unauthorized performance of abortions by unqualified persons. Abuses in this field have already been the concern of the Attorney-General of the State of New York. (See *Matter of Weitzner* v. *Lefkowitz,* 66 Misc 2d 721; *Matter of Montwill Corp.* v. *Lefkowitz,* 66 Misc 2d 724.) Thus, since there is a rational basis for the requirement, that should be the end of a court's review of an administrative agency's handling of this matter. (*Matter of Colton* v. *Berman,* 21 N Y 2d 322, 334; 1 N. Y. Jur. Administrative Law, §§ 168–169.) Furthermore, the Supreme Court in *Roe* v. *Wade* and *Doe* v. *Bolton* repetitively stresses the compelling interest of the State in proper medical facilities for all abortions. Record keeping becomes all the more important today since we seem to be on the threshold of mass abortions, or genocide of many of the unborn, under six months, with the blessing of the Supreme Court; and we are still in the dark as to the ultimate effects of this course on both the Nation and on the personal lives of those involved. As for the invasion of privacy argument, as Mr. Justice Douglas said (*supra*) " Their impact upon a woman's privacy is minimal." And section 204.07 of the Health Code specifically mandates confidentiality; and in the event of court proceedings, there is always the ancient and inherent right of a court to' seal records. Lastly, I advert to the recent case in this Department, relative to the identification of a patient undergoing drug therapy. (See *People* v. *Newman,* 40 A D 2d 633.) [70 Misc 2d 1093.]