Samuel A. Spiegel, J.
This is an article 78 proceeding by a physician and his patient to annul a requirement by the respondent agencies that a fetal death certificate filed in all medical procedures for abortion shall include the name and address of the aborting patient.
The patient herein is not identified. She refuses to disclose her identity by reason that such a requirement invades her privacy upon an especially and exceptionally personal matter, and requires her physician to breach a confidential communication. The petitioners further contend that such a requirement is not mandated by any statute, serves no valid governmental purpose or other reasonable basis, and is therefore arbitrary.
The respondents contend that the inclusion of the patient’s name and address will help the patient if she later suffers complications or dies, since a search of the records for a certificate of termination of pregnancy will reveal her medical history, aid the authorities to determine if proper medical procedure was used, and indicate if the abortion might have an adverse effect upon her future ability at complete gestation, so as to counsel her thereon.
The genesis for fetal death certificates arises from section 567-1.0 of the New York City Administrative Code which provides that the Department of Health of the City of New York “ shall keep a .record of * * * fetal deaths ”. Article 203 of the Health Code requires the filing of a certificate of termination of pregnancy, and subdivision (b) of section 203.5 thereof provides that ‘ ‘ The certificate * * * be prepared on forms prescribed by the Board and furnished by the Department.” Subdivision 3 of section 1706 of the New York City Charter provides that “ The board of health shall prescribe * * * the persons who shall be required to keep a registry of birth, fetal deaths and deaths occurring in the city and file certificates thereof with the administration and the form and manner in which such registry shall be kept and certificates filed ”.
There is no statutory or decisional authority directing the inclusion of the name and address of the patient on a fetal death certificate. A fetal death certificate concededly is subject to inspection by certain governmental agencies and must be filed within 24 hours of the operation pursuant to section 4161 of the Public Health Law and section 203.03 of the New York City Health Code. Petal deaths fall into two categories:
1. Termination of pregnancy pursuant to State law within 24 weeks.
*1095 2. Termination of pregnancy regardless of its duration.
There is no suggestion that the abortion herein was other than legal. It was performed at the Bronx Municipal Hospital by a licensed gynecologist who is also the director of obstetrics at said hospital.
The form of certificate as drawn and used by the Department of Health, however, requires all statistics and the name and address of the patient. The patient, Jane Doe, refuses to divulge only her identity and has instructed her doctor to do likewise. Neither the State nor the city specifies the exact content of the certificate nor requires the name and address of the patient. The city has refused to accept the certificate without the identification of the patient.
The issue presented is novel and turns essentially upon the reasonableness of the requirement for patient identification as established by the rules of the respondent agencies. There is little doubt about the gravity of this issue and the circumstances from which it emanates. The fundamental right of woman to choose to bear children is concomitant with her right of privacy in matters related to marriage, family and sex. (People v. Belous, 71 Cal. 2d 954; Griswold v. Connecticut, 381 U. S. 479.) Indeed, the amendment of the abortion statute by the Legislature in 1970 permitting abortions within the first 24 weeks of gestation (Penal Law, § 125.05, subd. 3) was hailed as an enlightened advancement in the struggle against an oppressive law which violated a woman’s constitutional right to control her own body and which intruded into the intimate affairs of the family, marriage, and sex without a compelling State interest. The Court of Appeals upheld the constitutionality of said statute (Byrn v. New York City Health & Hosps. Corp., 31 N Y 2d 194).
A serious public health problem was created by the earlier restrictive abortion law, which drove women into the illegal market to be aborted by untrained persons using the crudest instruments under unscientific and unsanitary conditions. The general public was appalled by the human misery suffered from the inability of a woman to abort a pregnancy resulting from rape or incest, or from a pregnancy likely to produce a child deformed as a result of disease or medication. From this anachronistic social scourge, the abortion law was updated to assure that women would be protected from some of the cruelties and vagaries of life.
In a recent case of similar import, this court struck down a directive by the State Commissioner of Social Services which *1096 deprived indigent women of Medicaid benefits for an abortion unless “medically indicated.” This court found the directive was discriminatory as to indigent women depriving them of the opportunity accorded to the more affluent to decide freely whether or not to bear a child. By segregating this class solely because of their indigency, without any compelling State interest to justify such classification, the directive increased the likelihood that indigent women would resort to unsafe and illegal means to obtain abortions. This court reasoned then, as it does now in this case, that the law is a distillation of social mores and that legislative enactments reflect the will of the people. (City of New York v. Wyman, 66 Misc 2d 402, affd. 37 A D 2d 700, revd. 30 N Y 2d 537.)
The Penal Law, as amended by the Legislature in 1970, followed the report of the Temporary State Commission on Revision of the Penal Law, designated by the Governor, to reflect that will. The report reads in part: “ Until our law is liberalized, the so-called abortion racket will continue unrestrained; operated by doctors who have no regard whatsoever for law, and sometimes by what have been called untrained butchers using ‘ coat hangers ’, with inadequate equipment, in unsanitary surroundings, and without proper post-operative care. * # * The deaths, sterility and harm to physical and mental health resulting from the large number of illegal abortions each year could largely be prevented if such abortions were performed by competent physicians in proper hospitals.” If the law is a distillation of our social mores, then the pregnancy of a single woman, for example, must still be recognized as contemporaneously tainted with social stigma. The law must recognize her right to conceal her identity, and must guard her fundamental right of privacy, so as to prevent stigmatizing this abortion patient. This can be accomplished by eliminating the requirement that her identity be disclosed in the fetal death certificate. An abortion can likewise be very embarrassing and humiliating to a married woman.
The effect of the directive requiring identification of a patient in a fetal death certificate is most discriminatory as to both married and single women and serves no compelling public purpose. It denies to them the equal protection of the laws as to their right to privacy. The State must clearly refrain from any discriminatory practice. (See, e.g., Griffin v. Illinois, 351 U. S. 12.) Single and married women by this directive would suffer an invasion of their right to privacy since they would be forced to identify themselves and become part of an abortion register against their *1097 will. Apart from the legal issues raised, rather than risk exposure the identification requirement by respondents will tend grievously to drive women back to the status quo ante, and illicit back-alley abortions will flourish again, thereby negating the objectives that were recommended by the Governor’s commission. This identification directive is repugnant to those objectives, and contrary to public policy and may destroy the very result sought by the Legislature in its enactment of the liberalized abortion statute.
Moreover, no useful purpose is demonstrated for revealing the identity of the patient. General statistical information may be compiled to measure the success of the implementation of the abortion law without requiring the identification of the patient.
The embarrassment, social stigma and humiliation that would ensue from any public revelation of the woman’s identity is hardly countervailed by the respondents’ contention that an abortion resulting in death ‘1 will aid in the helping of the patient ” by a search of the fetal death certificate to establish the identity of that patient. The claim that such identification is needed to compile statistical data of the possible adverse effect of multiple abortions upon the same woman is a specious invasion into the private life of a patient, and an unconsenting intrusion into the physician-patient relationship, an immunity from inquiry which has been heretofore zealously and jealously guarded by statute (CPLR 4504, subd. [a]).
In the course of striking down a Massachusetts statute prohibiting the distribution of contraceptives to unmarried individuals, Mr. Justice Brennan, speaking for himself, Mr. Justice Douglas, Mr. Justice Stewart, and Mr. Justice Marshall,' declared that1 ‘ if the right of privacy means anything, it is the right of the individual, married or single, to be free from unwarranted governmental intrusion into matters so fundamentally affecting a person as the decision whether to bear or beget a child ” (Eisenstadt v. Baird, 405 U. S. 438, 453).
An unwarranted governmental intrusion of privacy would result if women are compelled to be recorded in an abortion register identifying those who for personal reasons decide not to bear a child.
Aside from being morally and legally wrong in its premise, the claim of the city that this would be a private register not available to the public is no assurance that the register will not become subject to subpoena and thus be made public. A reading of section 204.07 of the New York City Health Code indicates *1098 situations where it may he available to numerous agencies for criminal action or scientific purposes.
Recently photographs from drug records of some methadone patients of the Health Services Administration, supposedly confidential and privileged, were subpoenaed by the Manhattan District Attorney. A motion to quash the subpoena was denied by a Justice of this court and a stay was denied on July 17 by a Justice of the Appellate Division. Another Justice of this court sentenced Dr. Robert Newman to 30 days in jail for contempt for refusal to honor the subpoena and to make public the photographs in the narcotic program methadone records. Another Justice of the Appellate Division stayed its execution until the appeal is heard. Conceivably, abortion records could become the subject of such a struggle.
CPLR 4504 (subd. [a]), liberally quoted and relied upon by the city in the Bertrand case, reads as follows: “ Confidential information privileged. Unless the patient waives the privilege, a person authorized to practice medicine, registered professional nursing, licensed practical nursing or dentistry, shall not be allowed to disclose any information which he acquired in attending a patient in a professional capacity, and which was necessary to enable him to act in that capacity. The relationship of a physician and patient shall exist between a medical corporation, as defined in article forty-four of the public health law, a professional service corporation organized under article fifteen of the business corporation law to practice medicine, and the patients to whom they respectively render professional medical services.”
The city is displaying unconscionable inconsistency on the one hand, in defending the methadone maintenance treatment program as confidential and privileged, and on the other hand in this abortion matter demanding that the doctor defy that confidential relationship in order to meet the city’s arbitrary quest for privileged information.
The city, in the Newman case opposing the production of methadone maintenance records argues basically for the protection of physician-patient privileged confidential relationship.
In this case involving an abortion patient, the city rejects the refusal of Dr. Schulman to abrogate the physician-patient relationship on the very same principle advanced by the city in the Newman case. The Corporation Counsel appears in both cases representing the Department of Health. Can the city seriously advocate two irreconcilably inconsistent and diametrically oppos *1099 ing standards for application of the privileged physician-patient relationship in this court? Every patient is entitled to the same protection and privilege. Standing on its own merits, regardless of the outcome of the Newman case, identification should not be required herein.
Respondents have not sufficiently persuaded this court, and this court has not clearly perceived any valid governmental purpose reasonably based for knowing the identity of the abortion patient. The city fails to show that the identity statistic is essential. This lack of purpose is especially apparent, by the absence of such a sovereign requirement for any other of the myriad medical operations performed. Indeed, the claim by respondents that identification is needed for scientific purposes seems bureaucratically contrived without a compelling public purpose or reasonable basis.
This conflict between the city’s seemingly unwarranted search for identity statistics, conflicts with the right of privacy of a woman, and with the clearly cherished right of absolutely confidentiality of a physician-patient relationship. When this occurs, it cannot be said that this is a reasonable exercise of police power, or of any governmental authority.
It is of the utmost significance that there is a peculiar absence of any proof, by way of example or existing cumulative statistical data offered by the respondents to substantiate their contentions. There is also a peculiar absence of revelation of the origin and language of the rule for abortion patient identification, the date of its promulgation, and the experience, if any, found from its implementation. Without this proof, the statements of two physicians employed by the respondents are vague and conclusory, and hardly sufficient to justify what otherwise clearly appears as an arbitrary and clinically unproven rule of abortion patient identification, frustrating the intendment of the recent abortion statute.
The court finds that the certificate so far as it requires the identification of the patient is an abuse of discretion and is arbitrary and capricious. The requirement to disclose the patient’s name and address is an unlawful invasion of her right to privacy. The disclosure of the identity of the patient by the doctor without her consent would be a violation of privilege and confidentiality of the physician-patient relationship. Finally, the requirements to identify the patient is contrary to public policy and would thwart the enlightened ends sought by the Legislature in the enactment of the reform of the Penal Law permitting abortions.
*1100 Accordingly, the petition is granted and the respondents are enjoined from requiring the name and address of the patient in the certificate reporting a fetal death.