Samuel A. Spiegel, J.
This article 78 proceeding was determined by judgment of October 6, 1972 (Matter of Schulman v. New York City Health and Hosps. Corp., 70 Misc 2d 1093) favorable to petitioners. They sought judgment annulling the requirement that a fetal death certificate shall include the name and address of the aborting patient. The requirement was found to be unreasonable. That determination was based on the proposition that (p. 1095) ‘ ‘ The fundamental right of woman to choose to bear children is concomitant with her right of privacy in matters related to marriage, family and sex. (People v. Belous, 71 Cal. 2d 954; Griswold v. Connecticut, 381 U. S. 479).” and (p. 1096) “ right to conceal her identity * , * her fundamental right of privacy, iso as to prevent stigmatizing this abortion patient.” Compliance with the requirement, it was ruled (p. 1096), “ is most discriminatory as to both married and single women and serves no compelling public purpose. It denies to them the equal protection of the laws as to their right to privacy.”
An appeal was taken from the judgment. There was reversal and remand, the Appellate Division stating (41 A D 2d 714): *151 ‘ ‘ This action is taken in fairness to all parties and in light of judicial decisions handed down since the determination herein, most notably Roe v. Wade (410 U. S. 113) and Roe v. Bolton (410 U. S. 179).”
In Eisenstadt v. Baird (405 U. S. 438, 453) the United States Supreme Court stated: “If the right of privacy means anything, it is the right of the individual, married or single, to be free from unwarranted governmental intrusion into matters so fundamentally affecting a person as the decision whether to bear or beget a child.” This court remains of the opinion that disclosure of the patient’s name is in no manner supportive of the State’s compelling interests while it seriously diminishes the right of privacy.
The right of privacy was examined with great care and precision in Griswold v. Connecticut (381 U. S. 479, 484, 485). There the United States Supreme Court declared:
“ specific guarantees in the Bill of Bights have penumbras, formed by emanations from those guarantees that help give them life and substance. * * *
“We have had many controversies over these penumbral rights of ‘ privacy and repose ’.**'*
“ The present ease, then, concerns a relationship lying within the zone of privacy created by several fundamental constitutional guarantees. And it concerns a law which, in forbidding the use of contraceptives rather than regulating their manufacture or sale, seeks to achieve its goals by means of having a maximum destructive impact upon that relationship. Such a law cannot stand in light of the familiar principle, so often applied by this Court, that a ‘ governmental purpose to control or prevent activities constitutionally subject to state regulation may not be achieved by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms.’ NAACP v. Alabama, 377 U. S. 288, 307. Would we allow the police to search the sacred precincts of marital bedrooms for telltale signs of the use of contraceptives? ”
So, too, in this case there has been a grant of legislative sanction reflecting such mores in respect of the woman’s right to abortion subject to the State’s compelling interests. The spirit and essence of the sanction would be lost by a disclosure after the fact. The disclosure contributes nothing to regulations already effectuated in the State’s interests before the time for filing of the fetal certificate.
The regulations and requirements reflecting the State’s compelling interests have to do with protecting the pregnant woman’s health and the potentiality of human life. Those *152 interests grow and become compelling at various stages of the woman’s approach to term. The concerns are met by regulating the qualifications of the person performing the abortion, the place at which it is done and the cautions provided for safety.
Thus, in Roe v. Wade (410 U. S. 113, 129, 155, 163, 164, supra), the United States Supreme Court declared:
“ The principal thrust of appellant’s attack on the Texas statutes is that they improperly invade a right, said to be possessed by the pregnant woman, to choose to terminate her pregnancy. Appellant would discover this right in the concept of personal ‘ liberty ’ embodied in the Fourteenth Amendment’s Due Process Clause; or in personal, marital, familial, and sexual privacy said to be protected by the Bill of Bights or its penum*? bras, see Griswold v. Connecticut, 381 U. S. 479 (1965); Eisenstadt v. Baird, 405 U. S. 438 (1972); id., at 460 White, J., concurring in result); or among those rights reserved to the people by the Ninth Amendment, Griswold v. Connecticut, 381 U. S., at 486 (Goldberg, J., concurring.) * * *
“ Although the results are divided, most of these courts have agreed that the right of privacy, however based, is broad enough to cover the abortion decision; that the right, nonetheless, is not absolute and is subject to some limitations; and that at some point the state interests as to protection of health, medical standards, and prenatal life, become dominant. We agree with this approach. * * *
“ With respect to the State’s important and legitimate interest in the health of the mother, the 1 compelling ’ point, in the light of present medical knowledge, is at approximately the end of the first trimester. This is so because of the now-established medical fact, referred to above at 149, that until the end of the first trimester mortality in abortion may be less than mortality in normal childbirth. It follows that, from and after this point, a State may regulate the abortion procedure to the extent that the regulation reasonably relates to the preservation and protection of maternal health. Examples of permissible state regulation in this area are requirements as to the qualifications of the person who is to perform the abortion; as to the licensure of that person; as to the facility in which the procedure is to be performed, that is, whether it must be a hospital or may.be a clinic or some other place of less-than-hospital status; as to the licensing of the facility; and the like. * * *
“With respect to the State’s important and legitimate interest in potential life, the ‘ compelling ’ point is at viability. This is so because the fetus then presumably has the capability of. meaningful life outside the mother’s womb. State regulation *153 protective of fetal life after viability thus has both logical and biological justifications. If the State is interested in protecting fetal life after viability, it may go so far as to proscribe abortion during that period, except when it is necessary to preserve the life or health of the mother.”
The court summarized as follows (pp. 164 — 165):
“ 1. A state criminal abortion statute of the current Texas type, that excepts from criminality only a life-saving procedure on behalf of the mother, without regard to pregnancy stage and without recognition of the other interests involved, is violative of the Due Process Clause of the Fourteenth Amendment.
“(a) For the stage prior to approximately the end of the first trimester, the abortion decision and its effectuation must be left to the medical judgment of the pregnant woman’s attending physician.
“ (b) For the stage subsequent to approximately the end of the first trimester, the State, in promoting its interest in the health of the mother, may, if it chooses, regulate the abortion procedure in ways that are reasonably related to maternal health.
“(c) For the stage subsequent to viability, the State in promoting its interest in the potentiality of human life may, if it chooses, regulate, and even proscribe, abortion except where it is necessary, in appropriate medical judgment, for the preservation of the life or health of the mother.
“ 2. The State may define the term * physician,’ as it has been employed in the preceding numbered paragraphs of this Part XI of this opinion, to mean only a physician currently licensed by the State, and may proscribe any abortion by a person who is not a physician as so defined.
“ In Doe v. Bolton, post, p. 179, procedural requirements contained in one of the modern abortion statutes are considered. That opinion and this one, of course, are to be read together.” There is no doubt whatever that the right of privacy was, indeed, explored with consummate insight. It is equally doubtless that the exercise in constitutional construction was restricted to aspects of health, physical plant and ministration and the constitutionality of such preabortion requirements provided by the legislative enactments before the court in Roe v. Wade (410 U. S. 113, supra) and Doe v. Bolton (410 U. S. 179, supra).
Here, too, a legislative requirement is involved having no relation to or impact upon the State’s compelling interests from pregnancy through the act of abortion. The post facto regulation respecting disclosure of the patient’s name as part of the fetal death certificate cannot add to the State’s knowledge or ability to implement and to protect its vital interests. There *154 is no compelling interest to invade the right of privacy by compelling a disclosure which is otherwise useless in this context. Bather, it would diminish the grant of privacy in respect of the woman’s body and the right to be shielded from disclosure of her exercise of that right of privacy.
This court reaffirms its prior decision which together with this decision covers the privacy of the petitioner Jane Doe during her pregnancy, at the point of abortion and thereafter. Since the patient is so protected, the physician can do no less than to decline to disclose the patient’s name, for the patient’s right becomes an integral part of the confidential relationship between physician and patient.
It is not amiss to note that section 4100 (subd. 2, par. [g]) of the Public Health Law provides that the registry of fetal death shall be arranged “ by the names of fathers, or the names of mothers if the names of the fathers do not appear ’ ’. The court need not dwell upon the facts of life which thus, discriminate rily, place an added burden on the woman. Thereby, indeed, the need for the name to aid in the implementation of the State’s compelling interests is clearly negated.
As this court said in its original decision in this matter, the position of the city in setting up an abortion register is legally and morally wrong.
There is no basis advanced in the Roe and Doe cases (supra) upon which this court can change its opinion.
The motion on remand is granted and judgment is awarded to the petitioners.