Frederick B. Bryant, J.
In this action the State of New York seeks an order permanently enjoining the defendant doctors from deleting required information from certificates of fetal death in alleged violation of the provisions of the Public Health Law. The complaint also asks for the imposition of civil penalties.
The information deleted consists of the names and addresses of the parents of aborted fetuses which, among other data, the defendants as attending physicians are required to furnish to the State Commissioner of Health pursuant to rule promulgated under section 4161 of the Public Health Law. The Commissioner has directed that such information be furnished to assist him in *841 preparing and maintaining an index of fetal deaths, arranged by name of the father or, if the father’s name does not appear, by that of the mother as required by section 4100 (subd. 2, par. [g]) of the Public Health Law.
The defendants have moved for an order dismissing the complaint pursuant to CPLR 3211 (subd. [a]) on the ground that it fails to state a cause of action and have joined with the plaintiff in requesting summary judgment. They argue that their admitted refusal to identify the parents is grounded on the physician-patient privilege provided by CPLR 4504 (subd. [a]). They further assert that to require them to furnish such information constitutes an unconstitutional invasion of the mother’s right to privacy, is contrary to public policy and denies the mother’s equal protection of law. The defendants contend that if a woman is compelled to disclose to the public authorities that she had an abortion she might be induced, especially if unmarried, to avoid such social stigma by resorting to ‘ ‘ back room butchers ”, thereby thwarting the purpose of New York’s liberal abortion legislation. (Penal Law, § 125.05.)
This court is of opinion that the physician-patient privilege standing alone may not be invoked to defeat the requirement of the Public Health Law with reference to the information required in reporting fetal deaths.
The physician-patient privilege was not known at common law but is a creature of statute. What the Legislature has created it can modify or restrict. Thus the privilege established by CPLR 4504 (subd. [a]) and its forerunners has been made subject to numerous statutory exceptions. Among these are: (1) Reporting the name of the victim of a crime under 16 years of age, CPLR (subd. 4504 [b]); (2) testimony as to the mental or physical condition of a deceased person, CPLR 4504 (subd. [c]); (3) reports concerning patients with communicable diseases, section 2101 of the Public Health Law; (4) reports on drug addicts, section 3344 of the Public Health Law; (5) reports of cases of child abuse, former section 383-a of the Social Services Law; (6) required reports of treatment for gunshot and other wounds, section 265.25 of the Penal Law. In all of these situations the privilege of confidentiality is limited by requirement to disclose prescribed information to public authority. Presumably the Legislature acts to limit the physician-patient privilege when.it deems that overriding considerations of public interest so dictate. (Cf. Matter of Investigation of Criminal Abortions in County of Kings, 286 App. Div. 270; People v. Lay, 167 Misc. 431, affd. 254 App. Div. 372, affd. 279 N. Y. 737.)
*842 The basic question in this case is whether the requirement that the names of parents of an aborted fetus be reported to the Department of Health, as part of the State’s vital statistics which the department has the duty of compiling, constitutes an unconstitutional invasion of privacy. In contending that it is such an unconstitutional requirement the defendants rely on those decisions of the United States Supreme Court which have expanded the rights of men and women to make decisions and to act in matters of sex and marriage without State intervention.
Griswold v. Connecticut (381 U. S. 479) is a forerunner in this field. That case struck down a statute that forbade the use of contraceptives by married persons. The court held that the right of privacy inherent in the marriage relationship was protected from such government intrusion. Eisenstadt v. Baird (405 U. S. 438) involved a Massachusetts statute that permitted married women to obtain contraceptives but prohibited their distribution to unmarried persons. The Supreme Court held such denial to be in violation of Fourteenth Amendment rights. Referring to the Griswold case the court said (p. 453): “If the right of privacy means anything, it is the right of the individual, married or single, to be free from unwarranted governmental intrusion into matters so fundamentally affecting a person as the decision whether to bear or beget a child.”
These cases led directly to the so-called “ abortion decisions.” In Roe v. Wade (410 U. S. 113), the court held unconstitutional a Texas statute that forbade abortions except to save the •mother’s life, and in so doing confirmed the absolute right of the mother to make the decision as to whether she would have an abortion or not. The court summarized its views on the State’s right to intervene with the mother’s decision as follows: First, within the first three months of pregnancy the decision to have an abortion is solely the mother’s under her right of privacy and its effectuation must be left to her physician; second, in the next stage running to from 24 to 28 weeks the State, in promoting its interest in health may, if it chooses, regulate. the abortion procedures in ways that are reasonably related to maternal health; and third, after viability the State may regulate or even proscribe abortion.
Doe v. Bolton (410 U. S. 179), concerned a more liberal Georgia statute that forbade abortions unless necessary to save the mother’s life, to prevent serious injury, to prevent birth of a defective fetus or where pregnancy resulted from forcible rápe. The Supreme Court held the statute unconstitutional as improperly restricting the mother’s right to privacy. The court also *843 held invalid the Georgia requirements that the abortion be performed only in a hospital accredited by the Joint Commission on Accreditation of Hospitals, that the abortion be first approved by an abortion committee of the hospital and that the attending physician’s planned abortion operation have the concurrence of two other physicians.
It is to be noted that these decisions confirmed the right of a woman to make her own decision as to an abortion and to act on it. Both the abortion cases make it clear that the Supreme Court did not completely remove the regulation of abortion from legislative control. Yet, in reliance on these eases, the defendants argue that the State has no power whatsoever to regulate in the field of abortions performed within the first trimester of pregnancy and that as to abortions performed thereafter any State regulation is limited to such matters as the qualification of the attending physician, licensing status of the facility where the abortion is performed and the like. They contend that the requirement that the patient be identified on the certificate of fetal death required is beyond the State’s power to regulate since such requirement does not meet the test of “ a compelling state interest ”. It is the defendants’ position that any intervention by the State in the private right of the mother to abort is a dilution of that basic right or, as the term is often used in First Amendment cases, it has a ‘ ‘ chilling ’ ’ effect on the exercise of the right. They label the requirement that the names of the parents of an aborted fetus be reported as an unwarranted governmental intrusion. The question therefore, is twofold — is the requirement unwarranted and does it in fact cause a dilution or “ chilling ” of the woman’s right of decision to have an abortion?
The foregoing decisions have consistently stricken as unconstitutional those provisions which deny or restrict a person’s freedom of choice and freedom of action. The Public Health Law requirements with which we are here concerned have no such effect. The woman’s right to have an abortion is in no way limited or conditioned. They simply require that information be furnished to enable the Commissioner of Health to keep records of vital statistics as mandated by statute. The true test of validity is thus not the 1 ‘ compelling state interest ’ ’, but whether the statutory requirement bears some rational relationship to a legitimate State end.
At the outset there is, of course, a strong presumption that the statute is constitutional. (O’Gorman & Young v. Hartford Ins . Co., 282 U. S. 251.) And the burden of showing its inva *844 lidity is on the person attacking it. (Metropolitan Co. v. Brownell, 294 U. S. 580.) The legitimate State end asserted here is the protection of the public’s health, including the study of mortality and'morbidity, and the long range effect of abortions on the health of women. To this end certificates of fetal death are required and such certificates without the names of parents are lacking in vital information. Some name is necessary for indexing purposes and the State by statute (Public Health Law, § 4100, subd. 2, par. [g]) has prescribed that such name be either that of the father or mother. The State argues that it has an interest in determining whether, on the basis of statistical information received, the recently liberalized abortion law is creating unexpected health hazards or the need for new programs and facilities. The future" effects on the health or death patterns of aborted mothers could not be studied without an index of the names of such persons. Further, it may be, as the State argues, that requiring identification of both parents serves the salutary purpose of making attending physicians more careful in including information regarding resulting complications. While the State has presented no evidentiary proof of these contentions by affidavit or otherwise, the defendants likewise have presented no evidentiary proof to refute the State’s rationale for the reporting requirement.
In the opinion of this court the defendants are giving greater weight to the Roe and Doe cases than is warranted. Those cases hold that the State has some power to regulate, but not prohibit, abortions, within a limited period of pregnancy. The State here, by its reporting requirement, is not even seeking to regulate abortion but only to obtain accurate reports for statistical purposes. Such requirement in no way interferes with the freedom of decision which the woman has, nor does it constitute a “ chilling ” of that freedom. As Mr. Justice Black said in Younger v. Harris (401 U. S. 37, 51): “ Moreover, the existence of a ‘ chilling effect ’, even in the area of First Amendment rights, has never been considered a sufficient basis, in and of itself, for prohibiting state action. Where a statute does not directly abridge free speech, but — while regulating a subject within the State’s power — tends to have the incidental effect of inhibiting First Amendment rights, it is well settled that the statute can be upheld if the effect on speech is minor in relation to the need for control of the conduct and the lack of alternative means for doing so.” The defendants make no showing here that the effect on the woman’s freedom of choice is more than minor.
*845 The Roe and Doe cases indicate that the kind of regulation limiting the right to privacy the court was condemning was of a very different nature from a mere reporting of an abortion operation with identifying information. The kinds of regulation which the court has refused to sanction have included, for example, (a) restricting the right to vote to land owners in school elections (Kramer v. Union School Dist., 395 U. S. 621); (b) denial of unemployment benefits to persons with less than one year of residence (Shapiro v. Thompson, 394 U. S. 618); (c) denial of vote to servicemen (Carrington v. Rash, 380 U. S. 89); (d) compelling disclosure of membership list (N. A. A. C. P. v. Alabama, 357 U. S. 449); and (e) discharge of a person for refusal to work on Saturday because of religious beliefs (Sherbert v. Verner, 374 U. S. 398). All of these cases involved direct threats to freedom of choice and action.
The provisions of the Public Health Law and the implementing requirements of the Commissioner do not violate a fundamental right in the sense that the term has been construed in the foregoing cases. The constitutional validity of the statute should, therefore, not be measured by the ‘ ‘ compelling state interest ” test. As urged by the plaintiff, the proper measure is whether the statutes bear some rational relationship to a legitimate State end. (McDonald v. Board of Election, 394 U. S. 802; McGowan v. Maryland, 366 U. S. 420.) The State’s expressed intention to use the data thus obtained for purposes of promoting public health is reasonably related to a legitimate purpose.
This court, therefore, does not agree with the holding in Matter of Schulman v. New York City Health & Hosps. Corp. (70 Misc 2d 1093) and (75 Misc 2d 150), to the extent that that case upheld the withholding of the names of the parents of an aborted fetus under the physician-patient privilege and under a broadly expressed doctrine of invasion of privacy. To the extent that the State seeks the identifying information for purposes solely to enable the Department of Health to fulfill its functions in promoting the health and safety of women having abortions this court finds no unwarranted violation of privacy.
The Schulman case, however, does raise a further issue with which this court agrees and which requires a dismissal of the complaint with summary judgment to the defendants. That issue concerns itself with the lack of adequate safeguards to prevent the identity of the persons.whose names are reported from becoming known outside the Department of Health and for purposes unrelated to public health. In Schulman the court referred to the lack of any assurance that such records may not *846 be subject to subpoena and commented on recent successful efforts of the District Attorney to subpoena supposedly confidential records of methadone patients of the Health Services Administration. Although the issuance of death certificates is supposedly limited to those showing some interest entitling them to receive such documents, it appears that this rule is easily circumvented. There are no special provisions for the filing of fetal death certificates — that is, no requirement that they be filed in a manner to insure that they are not available to those with no legitimate reason for having them. There are no provisions, for example, which would make such information completely unavailable except pursuant to a court order issued only on a showing of necessity. Inquiry at the Department of Health locally indicates that information concerning such identity may be rather easily obtained.
Referring to the “ social stigma” supposedly attached to abortions, especially in the case of unwed mothers, the defendants suggest that a woman faced with the requirement that her identity be reported might resort to “ back room butchers ” to preserve her privacy. The court is not so much concerned with that rather remote possibility as it is with the possibility that the identifying information furnished may become available to members of the public, whether they be prying neighbors or others seeking information as to the identity of aborted females for purposes unrelated to the public interest in health. While this court is prepared to accept the State’s justification for requiring that identity of the persons concerned be reported to it, it does not condone the making available of such information in the same manner as it is made available in the case of other deaths. Thus, although this court does not accept the view that the right of privacy is so all-embracing as to exclude the State from any interest in abortions, it is of the opinion that the “ penumbra ” of privacy referred to by Mr. Justice Douglas in Griswold v. Connecticut (381 U. S. 479, supra), should extend to the protection of the identifying names required by the State once such information has been received.
The confidentiality of such identifying information can best be achieved by legislative act. Whatever method of preserving such confidentiality is adopted) the court holds that reporting the name of the father or mother in cases of fetal death resulting from lawful abortion cannot be required until such confidentiality is adequately protected.
The defendants’ motion to dismiss the complaint and for summary judgment is granted.