Leon D. Lazer, J.
For the past four years the Town of Huntington, through its Youth Board, has operated a highly successful drug abuse counseling program euphemistically labelled "Starshine.” The program is jointly funded pursuant to an annual contract between the Town and the Suffolk County Drug Control Authority (County Authority) based upon an agreement between the latter agency and the New York State Drug Abuse Control Commission (State Commission). The Town’s contract requires it to maintain records for each addict or drug abuser participating in the Starshine program and to submit the information on forms provided by the County Authority.
The Youth Board complied with reporting requests on the program until April of 1975 when the State Commission introduced a new reporting system which requires the local agency to complete individual forms for each participant in the program and which requires considerably more information than had previously been requested. By letter dated April 4, 1975 the County Authority advised the Town that failure to complete the forms would constitute a violation of the contract and would endanger future funding. The Town and its Youth Board (hereafter jointly referred to as the "Town”) thereupon instituted an action against the County Authority and the State Commission to enjoin the use of the new forms and to compel the continued payment of funds. The matter is before this court on the Town’s motion for a preliminary injunction and the cross motions of the defendants to dismiss the action on the basis of the Town’s alleged lack of standing and its claimed failure to state a cause of action. Also pending for current determination is an intervention motion by an *140 individual anonymous participant in the program who seeks to become a plaintiff.
The new reporting system requires, inter alia, the following information with respect to individual participants: date of birth, marital status, veteran status, race or ethnic group, religion, education status, welfare status, employment and employment history, means of support, medical problems, alcohol use, legal condition, treatment history, arrest history, cost of drugs per day and drugs used prior to admission and at the time of admission. The latter two inquiries are specifically directed toward the use of illegal drugs. While the forms do not require the name, address or social security number of Starshine participants, Question 2 requires the Town to divulge the "client number” by which the individual participants are designated. The Town claims that under the new system the defendant can easily ascertain the identity of any participant either by decoding the client number or subjecting the answers to the other questions to computer analysis. It is the plaintiffs’ position that to divulge the information requested would constitute a violation of Federal and State statutes, a violation of the constitutional rights of the Town and of the program participants, and a breach of the funding contract which provides for confidentiality in compliance with applicable statutes. The intervenor adds to this that the disclosures sought would violate his own constitutional rights.
THE JUSTICIABILITY OF THE ISSUE
Despite the March 31, 1975 expiration date of the contract between the Town and the County Authority, it is clear that there still exists an ongoing relationship between the defendants and the Town which makes the current issues real and not academic. In addition to the warning letter of April 4, 1975, which is in the record, attached to the Town’s brief is a July 11, 1975 letter from the County Authority advising the Town that State funding will be terminated as of August 15, 1975 if the "forms are not forthcoming.” The letter also suggests a meeting "to discuss the serious implication of such a closing, clarify issues, and explore alternatives.” Since funding still continues and the parties are still trying to resolve the dispute, the relationship persists and the Town may challenge the new reporting system and any decision to cut off funding based on it.
*141 THE INTERVENTION MOTION
The motion to intervene is opposed by the defendants on the ground that it is untimely since it was brought on months after the hearing on the original show cause order and six weeks after the motions to dismiss were made. Although the proposed complaint restates the same issues raised in the Town’s pleadings, it deals with the prospective intervenor’s personal constitutional rights. Under such circumstances the movant should not be remitted to the role of an onlooker. The intervention statute must be applied liberally where substantial rights are involved (Matter of Eberlin, 18 AD2d 1068), and the motion will therefore be granted.
THE TOWN’S STANDING
The Town alleges that it has standing because it is a real party in interest by virtue of injury in fact. It asserts that, if it complies with the new reporting requirements, it could be found criminally liable for disclosure of confidential information under subdivision (f) of section 1175 of title 21 of the United States Code and its action might result in loss of confidence by the participants and their withdrawal from the program. It further argues that if it does not comply it will suffer economic injury because its funds will be cut off.
In sum, it is the Town’s contention that it has sufficient stake in the outcome of the controversy to assure the requisite "concrete adverseness” (see Jenkins v McKeithen, 395 US 411, rehearing den 396 US 869; Baker v Carr, 369 US 186) to take the case out of the general rule that one may not claim to vindicate someone else’s constitutional rights (Moose Lodge No. 107 v Irvis, 407 US 163; Tileston v Ullman, 318 US 44; Matter of Donohue v Cornelius, 17 NY2d 390). Regardless of whether or not its own investment in the Starshine program constitutes a "property right” such as would entitle it to assert the constitutional rights of others (see Pierce v Society of Sisters, 268 US 510), it is clear that the program might very well be adversely affected by diminished participation by drug abusers if the magnitude of disclosure required by the defendants is effectuated (see NAACP v Alabama, 357 US 449; see, also, House Report No. 92-775; 1972 US Cong & Admin News, p 2045).
The Town’s standing can also be sustained under the rule that a litigant may assert third-party rights where individuals *142 not parties to a lawsuit stand to lose by its outcome and yet have no effective avenue of preserving their rights themselves (Broadrick v Oklahoma, 413 US 601; Eisenstadt v Baird, 405 US 438). The principle was applied in NAACP v Alabama (supra, p 459) where in upholding the NAACP’s assertion of the rights of its members as a defense to an order to produce its membership records, the Supreme Court wrote: "If petitioner’s rank-and-file members are constitutionally entitled to withhold their connection with the Association despite the production order, it is manifest that this right is properly assertable by the Association. To require that it be claimed by the members themselves would result in nullification of the right at the very moment of its assertion.”
Since the participants in the Starshine program have at least a qualified right to anonymity (see cases cited infra; see, also, the interpretive rules pertaining to US Code, tit 21, § 1175 in 40 Fed. Reg. 27807), that right would be nullified should they themselves be compelled to resort to the judicial process to establish the invalidity of the forms. Thus, despite his current use of the pseudonym "John Doe”, a plenary trial will surely reveal the identity of the intervenor.
Since under Federal statute U. S. Code, tit 21, § 1175, subd [b] par [2], cl [B]), disclosure to agencies such as the defendants is authorized and it is possible misuse by the latter which is in issue here, the Town’s claim that its compliance with the new reporting system will subject it to penal sanction is of dubious validity. Nevertheless, the Town should not be compelled to choose between violating its contractual commitments and destroying its own program by violation of the rights — constitutional or statutory — of the Starshine participants (cf. Barrows v Jackson, 346 US 249, rehearing den, 346 US 841; Board of Educ. of Cent. School Dist. No. 1 v Allen, 20 NY2d 109, affd 392 US 236).
THE FEDERAL STATUTE AND ITS CLAIMED VIOLATION
While the plaintiffs contend that the new reporting forms do not comply with Federal law and regulations which relate to the confidentiality of patient records, the State Commission responds that the forms "were devised to accord with the national reporting system” and that Federal law is, in any event, inapplicable because the Starshine program is not Federally funded. The pertinent statute is section 1175 of title 21 of the United States Code (Drug Abuse Prevention and *143 Treatment) and it provides in subdivision (a) for the confidentiality of patient records "which are maintained in connection with the performance of any drug abuse prevention function conducted, regulated, or directly or indirectly assisted by any department or agency of the United States”. Section 2.12 (subd [a], pars [3], [4]) of the joint regulations promulgated under this section and under the Public Health Law (US Code, tit 42, § 4582) effective August 1, 1975 (42 CFR 2.1 et seq.; 40 Fed Reg 27802 et seq.) provide that they are applicable, inter alia, to records which are maintained in connection with the performance of any alcohol abuse or drug abuse prevention function:
"(3) Which is assisted by funds supplied by any department or agency of the United States, whether directly through a grant, contract, or otherwise, or indirectly by funds supplied to a State or local government unit through the medium of contracts, grants of any description, general or special revenue sharing, or otherwise, or
"(4) Which is assisted by the Internal Revenue Service of the Department of the Treasury through the allowance of income tax deductions for contributions to the program conducting such function, or by a way of a tax-exempt status for such program.”
The Town urges that Starshine is within the purview of the Federal statute because the program’s funding sources — the State, the county and the Town — are all participants in revenue sharing. While it has not been demonstrated that Federal revenue funds have been specifically allocated to Starshine by any of the three funding entities or that the program is either tax exempt or that contributions to it are tax deductible, the Federal regulations themselves declare that: "With regard to § 2.12 (a) (3), it seems clear that whenever a State or local government is assisted by the Federal government by way of revenue sharing or other unrestricted grants, all of the programs and activities of the State or local government are thereby indirectly assisted, and thus meet that aspect of the statutory criteria for coverage.” (40 Fed Reg 27806).
Thus on the basis of the interpretation of the administrative agency charged with executing the provisions of section 1175 of title 21 of the United States Code, Starshine falls within the ambit of the statute. Such an interpretation by the agency responsible for administering a Federal statute is entitled to great respect (Udall v Tallman, 380 US 1, rehearing den 380 *144 US 989; People v Newman, 32 NY2d 379, cert den, 414 US 1163) particularly in view of the ambiguity of the statutory language. In the absence of any compelling argument to the contrary by the State Commission the Federal statute must be construed as applicable to the instant facts.
The statute (U S Code, tit 21, § 1175, subd [b], par [2], cl [B]) provides that even in the absence of his or her consent the contents of a patient’s record may be disclosed: "(B) To qualified personnel for the purpose of conducting scientific research, management audits, financial audits, or program evaluation, but such personnel may not identify, directly or indirectly, any individual patient in any report of such research, audit or evaluation, or otherwise disclose patient identities in any manner.” In addition, the regulations permit disclosure of "patient identifying information” to the aforementioned authorized recipients provided that the State Attorney-General and the recipients certify in writing to the existence of certain safeguards and practices (42 CFR 2.53 [d] [1], [2]; 40 Fed Reg 27817).
The State Commission avers that the purpose of its new reporting system is dual: to gather data for epidemiological and planning purposes pursuant to subdivisions (a), (c), (g) and (h) of section 81.09 of the Mental Hygiene Law; and to enable the State Commission to insure that services for which the State funds were allocated are provided in compliance with the standards prescribed in subdivision (c) of section 83.05 of the Mental Hygiene Law relating to quality of care, sufficiency of staff, facilities and equipment to be used, and records to be maintained. The County Authority’s powers appear similarly broad (see Local Laws, 1973, No. 17 of Suffolk County). Thus, disclosure both to the State Commission and the County Authority for the purposes stated would appear authorized under the Federal statute.
The Town argues, however, that the forms constitute a violation of Federal disclosure rules, not only because they seek more information than is necessary for defendants’ purposes (see 42 CFR 2.18-1; "40 Fed Reg 27809), but because current computer technology can retrieve patient identity from the information. Under the regulations, "patient identifying information” is defined in section 2.11(j) of title 42 of the Code of Federal Regulations as meaning "the name, address, social security number, or similar information by which the identity of a patient can be determined with reasonable accu *145 racy and speed either directly or by reference to other publicly available information. The term [patient identifying information] does not include a patient identifying number assigned by a program.” Since Starshine is required to furnish identifying numbers but not "name, address, social security number,” the validity of the forms may depend on whether the answers to the other 30 questions will constitute "similar” information by which the identity of a patient can be determined with "reasonable accuracy and speed.” Thus, when the denial by the State Commission that it is subject to the requirements of Federal law (and its safeguards) is interfaced with the Town’s claim that speedy unauthorized identification of program participants will result from use of the new forms, it becomes apparent that there exists a cognizable issue as to violation of Federal law. This is an issue which cannot be resolved summarily by resort to the instant papers which make undocumented charges and raise unsubstantiated defenses. A plenary trial will therefore be required.
THE CONSTITUTIONAL ISSUE
It is the Town’s contention that apart from the asserted statutory violation, the new reporting system intrudes upon the constitutional rights of Starshine’s participants. While not disputing the defendants’ rights to some information, the plaintiffs urge that the magnitude of the disclosure sought is a violation, inter alia, of the participating drug abusers’ right to privacy. The defendants’ posture is that records maintained by a rehabilitation program such as Starshine are not entitled to constitutional protection.
Although a separate right of privacy was recognized as early as 1890 (see Warren and Brandéis, The Right of Privacy, 4 Har. L. Rev. 193), it is a peculiarly contemporary concept and its parameters are still evolving. Thus far, the Supreme Court has extended its protection only to the most intimate phases of personal life having to do with sexual intercourse and its possible consequences (Rosenberg v Martin, 478 F2d 520, 524, cert den, 414 US 872), i.e., to such issues as the right to purchase contraceptives (Eisenstadt v Baird, 405 US 438, supra; Griswold v Connecticut, 381 US 479) and the right to abort a pregnancy (Roe v Wade, 410 US 113, rehearing den 410 US 959). To date, therefore, protection has been afforded against governmental regulation of certain forms of personal intimate conduct rather than against governmental intrusions ' *146 upon the confidentiality of personal information (see Henkin, Privacy and Autonomy, 74 Col L Rev 1410 [1974]). Statutory reporting systems including reports on drug addicts traditionally have been immune from the constitutional protection of a right of privacy (see, e.g., Felber v Foote, 321 F Supp 85; McNamara and Starr, Confidentiality of Narcotic Addict Treatment Records: A Legal and Statistical Analysis, 73 Col L Rev 1579 [1973]). Nevertheless, in Roe v Ingraham, (480 F2d 102) the Court of Appeals construed Roe v Wade as authority for further extension of the protection of privacy in a case involving — coincidentally—records on drug addicts and convened a three-Judge District Court to try the issues. The statute involved was New York’s Public Health Law (§ 3331, subd 6; § 3332, subds 1, 2, par [a]; § 3333, subds 1, 4; § 3338, subd 2), which in combination require physicians and pharmacists to file with the State copies of prescriptions for certain drugs. Declaring that there was presented a substantial question of the constitutionality of the statute, the court found that the patient’s interest "in keeping to himself the existence of his physical ailments and his doctor’s prescriptions for them” might be embraced within the concept of privacy (id. 480 F2d, at p 108) (italics supplied). On remand, the three-Judge court denied a motion to dismiss the action, holding that plaintiffs were entitled to explore the outer reaches of the right of privacy and to submit the necessary intensive and detailed analysis of the competing interests of the state and the individual (Roe v Ingraham, 364 F Supp 536). The language of the decision in Roe v Wade has, indeed, invited a more liberal application of the amorphous right of privacy than theretofore had been deemed appropriate. The foundation of the right of privacy was ascribed to the concept of personal liberty in the Due Process Clause of the Fourteenth Amendment and in his concurring opinion Mr. Justice Stewart quoted Mr. Justice Harlan's dissent in Poe v Ullman which defined the scope of the Due Process Clause as "a rational continuum which, broadly speaking, includes a freedom from all substantial arbitrary impositions and purposeless restraints” (Poe v Ullman, 367 US 497, 543).
A broad interpretation of Roe v Wade recently has been tacitly reaffirmed in a case involving hotel registration of the mentally ill (Stoner v Miller, 377 F Supp 177). Although the Appellate Division, First Department in this State has held that the name and address of persons having abortions in the *147 City of New York may be reported to the City Commissioner of Health pursuant to regulation without violating their right of privacy since the State (city) has a compelling interest in such information (Matter of Schulman v New York City Health and Hosps. Corp., 44 AD2d 482, 486; see, also, State of New York v Jacobus (75 Misc 2d 840), the court nevertheless suggested that "there may be limits beyond which a government may not constitutionally go in requiring the maintenance of records.” While, in view of its holding, Schulman should not be read as a forward progression in the status of judicial recognition of privacy rights, it does suggest that the governmental right to maintain records may be subject to viable challenge by those asserting a right of privacy.
Assuming, then, that drug addicts may have a right to privacy relative to their records, it is quite apparent that the constitutional issues raised can be adjudicated only by weighing evidentiary exploration of the rights asserted and proof of their violation against evidence of the State’s interest in disclosure. The conflicting assertions made in the instant adverse papers are not susceptible to summary determination. At a plenary trial it will be the plaintiffs’ burden to establish that the asserted right is of constitutional proportions and that it has been impermissibly invaded by the destruction of anonymity. It will then be incumbent upon the defendants to prove a substantial relation between the information sought and a compelling State interest (see Gibson v Florida Legis. Comm., 372 US 539; Matter of Schulman v New York City Health and Hosps. Corp., supra) and that the means they have chosen is the least restrictive alternative (see San Antonio School Dist. v Rodriguez, 411 US 1, rehearing den 411 US 959; Shelton v Tucker, 364 US 479).
On the state of the current record plaintiffs’ further allegation that the new reporting system violates legitimate and justified expectations of privacy under the Fourth Amendment (see Berger v New York, 388 US 41) must also await a plenary trial as, indeed, must the Town’s argument that the defendants have denied the Starshine program equal protection because school-based drug abuse programs are not required to file similar forms. There is nothing in the instant papers to indicate whether or not this particular classification has a rational basis (8200 Realty Corp. v Lindsay, 27 NY2d 124). The plaintiffs’ final thesis — that the drug abusers’ Fifth Amendment rights relative to their records will be invaded by *148 the new forms — has no current validity in view of the recent Supreme Court holding that one incriminated by evidence produced by a third-party record keeper sustains no violation of his own Fifth Amendment rights (California Bankers Assn. v Shultz, 416 US 21; see, also, Couch v United States, 409 US 322).
CONCLUSION
Despite the cavalier tones of disdain adopted by the defendants, it is patent that the issues presented in this case are significant and that the trial which will result represents a potential forum for further delineation of the constitutional parameters of the rights of privacy. Pending that trial, the plaintiffs have not established the factual verity of their claims to the extent that they have a clear legal right to the relief sought (Town of Southeast v Gonnella, 26 AD2d 550) and until they prove their allegations relief must be withheld. The Town’s motion for a preliminary injunction therefore is denied. For the purposes of the dismissal motions, however, the truth of plaintiffs’ claims must be assumed and several valid causes of action thus have been stated. Therefore defendants’ motions must also be denied. As earlier stated, the motion to intervene is granted.