OPINION OF THE COURT
Harold J. Hughes, J.
This article 78 proceeding is brought pursuant to subdivision 6 of section 5003 of the Education Law to review determinations dated December 31, 1980 which denied the applications of petitioners for renewal of their licenses to operate private schools.
Petitioners operate private cosmetology schools subject to licensing by the Education Department (Education Law, § 5001, subd 1). The schools employ six instructors, two secretaries, a bookkeeper and a financial aid officer and have an enrollment of approximately 50 students. The schools have been licensed by the Education Department since the enactment in 1973 of the statute requiring licens *894 ing. Pursuant to subdivision 3 of section 5001 of the Education Law a private school is required to renew its license biannually. On February 22, 1979 the Assistant Commissioner for Occupational and Continuing Education issued a directive advising private schools that a new system referred to as the occupational education data system (OEDS) was being implemented requiring schools to collect and report information regarding their students with the information to be submitted as part of the license application. The schools were required to complete OEDS forms 7 and 8 and to maintain records to substantiate the data. Petitioners objected, upon several grounds, to collecting the information sought and requested a hearing upon the issue. That request was denied and by written communications of December 31, 1980 petitioners were advised that their applications to renew licenses were denied by reason of their failure to submit OEDS forms 7 and 8 for the reporting period of July 1, 1978 to June 30, 1979. The schools were directed to cease operation within 60 days. This proceeding ensued.
The directive of February 22, 1979 provides in pertinent part:
“A number of schools returning comments have requested a citation of the Department’s authority for the collection of information from their schools. Section 215 of Education Law empowers the Commissioner of Education with the general authority to collect information from any school or institution under the educational supervision of the State. Section 5003 of Education Law and Sections 126.7 and 126.11 of the Regulations of the Commissioner of Education contain specific mandates for the collection of information from Licensed Private Schools and Registered Private Business Schools. Data requested on OEDS forms 7 and 8 are part of the data to be required by the Department and all schools should begin to maintain records that are compatible with the information categories listed on the forms.
“The reports being sent to you for completion are the result of an extensive Department analysis and contain only the most essential data elements required for state level planning, administration and Federal reporting pur *895 poses. Obtaining information from all types of educational agencies participating in the training process will enable the SED to develop a more accurate and comprehensive picture of the number of people being trained for employment in specific occupations. ***
“The other types of information requested on OEDS forms will be exempted from audit since schools cannot require students to identify their racial/ethnic background, academic or economic disadvantagements (including limited English-speaking ability) or handicapping conditions. These data categories are not voluntary, however, and schools should use some sort of observational technique at the time of registration (or other appropriate time) to obtain the data needed to complete these sections of the form. Schools should be prepared to document the procedures they have used to summarize the data presented in these categories.”
The specific instructions for completing OEDS form 7 direct in part, as follows:
“Disadvantagement, Handicapping Condition: In column 5, indicate the number of students reported in columns 1-4 that have academic and/or economic disadvantagements that markedly interferes with their ability to successfully complete their occupational program at this school. Academic disadvantages are defined as a lack of sufficient reading, writing or mathematical skills. Economic disadvantagements which may be considered are (1) unemployment, (2) receipt of public assistance (welfare) under federal state or local programs, (3) institutionalization or State guardianship, (4) family income below established poverty level criteria, or (5) Student Financial Aid Programs (i.e. BEOG, SEOG, TAP, Student Loans).
“In column 6, indicate the number of students reported in columns 1-4 that have handicapping conditions (other than academic or economic disadvantagements) that markedly interferes with their ability to successfully complete their occupational program. Handicapping conditions which may be considered are mental retardation, hearing impairments and deafness, speech impairment, visual impairment and blindness, serious emotional disturbances, *896 orthopedic impairments, and other serious health impairments.
“Students who have both an academic or economic disadvantagement and a handicapping condition should, be reported only once in the handicapped category.
“Section II — Number of Students Enrolled with Limited English-Speaking Ability (LESA)
“Of the total number of students reported in Section I, columns 1-4, for all programs, indicate the number by sex, whose native tongue is a language other than English or who come from environments where a language other than English is dominant and because of either of these reasons have difficulties speaking and understanding instructions in the English language. Report students as ‘LESA’ only if their language impairment is severe enough for this school to provide special assistance or a modified program in order for the students to successfully complete the program.
“Section III — Racial/Ethnic Composition of Students Enrolled
“Of the total number of students reported in Section I, columns 1-4, for all programs, indicate the number of students identified as belonging to each of the racial/ethnic classifications defined below:
“American Indian or Alaskan Native — A person having origins in any of the original peoples of North America.
“Black, not of Hispanic Origin — A person having origins in any of the black racial groups.
“Asian or Pacific Islander — A person having origins in any of the original people of the Far East, Southeast Asia, or the Pacific Islands. This area includes, for example, China, Japan, Korea, the Phillipine Islands and Samoa.
“Hispanic — A person of Mexican, Puerto Rican, Cuban, Central or South American, or other Spanish culture or origin, regardless of race.
“White, not of Hispanic Origin — A person having origins in any of the original peoples of Europe, North Africa, the Middle East, or the Indian subcontinent.
*897 “Schools do not have to require students to specify their race or ethnic background and/or maintain this information as part of the student’s permanent record. Data to be reported here could be based on the observations of personnel involved in the registration process at the school or personnel having regular direct contact with the students (i.e. teaching staff, registrar, etc.).”
OEDS form 8 requests similar information with respect to handicapping conditions, economic disadvantage and racial-ethnic background. Petitioners vigorously protest the attempt by respondents under the guise of the licensing power to compel them to gather by covert observational techniques information about the private lives of their students that may not be obtained by direct inquiry of the students. Petitioners’ objections are: (1) the directive of February 22, 1979 has never been formally adopted as a rule or regulation and thus is without binding effect; (2) there is no authority by statute or regulation authorizing the Education Department to gather the information requested in forms 7 and 8; (3) the required collection of the data by private schools is an intrusion and a costly burden upon private education; (4) no observational techniques exist which would enable the schools to gather the information requested in the forms; (5) the schools have been deprived of due process by the denial of their request for a hearing; (6) the administrative activity here under review is arbitrary and capricious; and (7) the petitioners’, and their students’, rights under the New York State and Federal Constitutions to privacy, liberty, and freedom from unjustified governmental intrusion have been infringed upon. Two students of the schools have joined in this proceeding as petitioners alleging violation of their rights to privacy.
Respondents’ defenses are that: (1) sections 215 and 5003 of the Education Law and the regulations found at 8 NYCRR 126.7 and 126.11 mandate the collection of this information; (2) petitioners are the only schools of approximately 350 schools licensed and registered in the State which refused to supply this information and by failing to submit a complete license application they cannot now be heard to complain that the denial of renewal was arbitrary *898 and capricious; (3) petitioners’ contention that they are unable to compile the required data by observational techniques is specious since 348 other schools have done so; (4) pursuant to Federal law and the regulations promulgated thereunder, schools having in attendance students receiving Federal moneys are required to compile information related to the racial and ethnic composition of the student populace and, having received direct financial aid, the petitioners are obligated by Federal law and regulations to compile and report data to the Federal authorities; (5) the data requested in the forms is necessary for long-range planning on the State and Federal levels with respect to the delivery of vocational educational programs; (6) there are other programs available for the individual student petitioners; therefore, the respondents seriously question statements made by the students in their affidavits; (7) the denial of a hearing was justified because the statute does not require a hearing when the applicant refuses to complete the license process.
The determinations denying renewal of petitioners’ licenses shall be annulled. Initially, the Appellate Division has recently held that the Commissioner of Education may not adopt an across-the-board directive applicable in all instances to all applicants without formally adopting a regulation or rule to that effect (Matter of Organization to Assure Servs. for Exceptional Students v Ambach, 82 AD2d 993). That is precisely what the respondents did by a requirement that all private schools licensed by the State gather the information requested in OEDS forms 7 and 8 or be denied renewal of their licenses. Such a sweeping decree should be enacted with all of the safeguards attending formal adoption of a regulation and not by a directive from an assistant commissioner.
The petitioners’ second objection to the determinations is equally well taken. In the area of information gathering from persons subject to its jurisdiction, an administrative agency is not free to act beyond the authority extended by statute or a regulation promulgated within the authority delegated by a State (Rapp v Carey, 44 NY2d 157). That is so in order to assure appropriate safeguards as to the *899 information gathered (State of New York v Jacobus, 75 Misc 2d 840, 845, 846). Here, the respondents rely upon the following language from subdivision 3 of section 5001 of the Education Law: “Application and renewal application for a license as a private school, together with financial and statistical reports required by the commissioner shall be filed on forms prescribed and provided by the department.”
Additionally, respondents rely upon the language of 8 NYCRR 126.10 that requires an applicant for a license to conduct a private school to submit together with the application “such other information as [the commissioner] may require”. Respondents also cite various Federal statutes and regulations for the authority to require the gathering of the data. The court has reviewed the language of the applicable statutes and regulations and finds no authority therein for the gathering of this information in the manner required by the respondents. This court holds that in view of the imposition of the onerous duties, costs, and invasion of privacy entailed by OEDS forms 7 and 8, specific statutory language authorizing the gathering of this information is required.
Respondents’ reliance upon the allegation that the petitioners may be in violation of Federal statutes and regulations with respect to the submission of information is no basis for denying a license under State law since the Federal statutes and regulations specifically address noncompliance with required disclosure and contain their own penalties, such as the cutting off of Federal moneys.
The petitioners’ fourth point with respect to the practical impossibility of gathering the information without direct inquiry of the students is valid. The court fails to discern how the petitioners can reasonably be expected to make covert investigation of the economic background of its students to ascertain a family’s income and the sources thereof. Moreover, the operators of this cosmetology school cannot reasonably be required to make medical evaluations as to whether their students are mentally retarded or emotionally disturbed. Compelling untrained personnel to make sensitive evaluations of the mental, emotional and physical condition of students based upon covert observational techniques is, at best, irrational. Furthermore, to *900 complete OEDS forms 7 and 8 petitioners must determine by observational techniques whether their students have any serious health impairments that would interfere with their ability to finish the occupational program which might compel a serious invasion of students’ privacy.
Turning to the request for racial and ethnic information, it would be unreasonable to expect the operators of these small private schools to determine simply by observation the ethnic and racial background of the students. Discerning a Pacific Islander from an Alaskan native, or a black not of Hispanic origin from a black of Hispanic origin, may be within the competence of the Department of Education but would be difficult for most members of society. Counsel for respondents recognized this upon the argument of the motion and conceded that all the Education Department wanted from the schools was “an educated guess”. This court holds that it is not reasonable to formulate long-range planning on the State and Federal levels with respect to delivery of vocational educational programs based upon guesses educated or otherwise. Finally, there is something abhorrent in these inquiries that is counter to the accepted value of this society that persons should advance by merit unhindered by racial or ethnic background. The stereotyping by guess mandated by respondents cannot serve to further any legitimate governmental end.
Many of the other points raised by petitioner also have merit, but shall not be addressed at length. Suffice it to say, that the action of the respondents in attempting to require a private school to gather by covert observational techniques information about the private lives of their students that cannot be gathered by direct inquiry is arbitrary and capricious. Furthermore, under the circumstances of this case the respondents should have afforded petitioners a hearing both pursuant to the statute (Education Law, § 5003, subd 5) and upon constitutional due process grounds. Finally, were the court to reach the right of privacy contentions raised by the petitioners, it would be inclined to expand the right of privacy enunciated by the Supreme Court in cases such as Griswold v Connecticut (381 US 479) and Shelton v Tucker (364 US 479) to encompass a right of information privacy (see comment on The *901 Use and Abuse of Computerized Information, 44 Albany L Rev 589). The inexorable infringement upon citizens’ privacy by governmental planners in the name of societal good requires from the courts close scrutiny to balance legitimate government needs against those of its citizens. Mr. Justice Brandéis stated the need of our citizens best in his dissent in Olmstead v United States (277 US 438, 478): “The makers of our Constitution undertook to secure conditions favorable to the pursuit of happiness. They recognized the significance of man’s spiritual nature, of his feelings and of his intellect. They knew that only part of the pain, pleasure and satisfactions of life are to be found in material things. They sought to protect Americans in their beliefs, their thoughts, their emotions and their sensations. They conferred, as against the Government, the right to be let alone — the most comprehensive of rights and the right most valued by civilized men.”
The application of petitioners for a judgment annulling the determinations of December 31, 1980 which denied their applications for renewal of licenses and ordered them to cease operations shall be granted, without costs, and the court shall, to the extent necessary (Matter of Croissant v Zoning Bd. of Appeals of Town of Woodstock, 83 AD 2d 673), convert the proceeding to an action (CPLR 103, subd [c]) and grant the requested declaratory relief declaring that the Commissioner of Education and the Education Department of the State of New York do not possess the authority to require private schools to collect and report the data required in OEDS forms 7 and 8, as the forms are presently comprised. This matter shall be remanded to the Education Department with direction to reconsider petitioners’ applications for renewal of licenses in view of this decision, and the stay contained in the order to show cause of February 17, 1981 will be continued until petitioners receive notice from the Education Department of its determination upon the reconsideration of the license renewal applications.